IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CDS FAMILY TRUST, *et al*, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:15–cv–02584–JMC |
| ERNEST R. MARTIN, *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

By consent of the parties, this matter is before me for all proceedings pursuant to 28 U.S.C. § 636(c). Now pending before the Court are ECF Nos. 136 and 139 filed by Defendants Corsa Coal Corp. ("Corsa Coal"), Wilson Creek Energy, LLC ("Wilson Creek"), and PBS Coals, Inc. ("PBS Coals") (collectively, the "Coal Defendants") seeking to preclude the testimony of Larry McDowell and Ronald Lewis, two experts designated by Plaintiffs, CDS Family Trust, LLC's and the Carl DelSignore Family Trust's (collectively, the "Plaintiffs") pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dowell Pharmaceuticals*, 509 U.S. 579 (1993). The Court has also reviewed Plaintiffs' Opposition (ECF No. 154) and the Coal Defendants' Reply (ECF No. 161). The Court finds that no hearing is necessary.

For the reasons set forth below, the Court will deny both motions at this time without prejudice. At trial, subject to the Court's guidance below, the Coal Defendants are free to renew challenges to credentials during the *voir dire* of the witness, including a challenge that the witnesses' training and experience are insufficient to allow him to opine as to some or all of the areas of expected testimony. Additionally, the Coal Defendants are free to move to strike some or

all of either expert's opinion testimony at the conclusion of their cross examination of the expert based on challenges to the reliability of the testimony or the sufficiency of its factual basis.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 provides for:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

As noted by Plaintiffs, Rule 702 was intended to liberalize the admission of relevant expert evidence and favors admissibility if the testimony will assist the trier of fact. See *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *Mack v. Amerisourcebergen Drug Coro.*, 671 F. Supp. 2d 706, 709 (D. Md. 2009). Moreover, a *Daubert* challenge focuses on whether the prerequisites to admissibility contained in Rule 702 are met, and "is not a tool to challenge the persuasive value of an expert's conclusions . . . [or] intended to take the place of vigorous cross-examination or intrude on the province of the jury." See *Ruark v. BMW of North Am., LLC*, No. ELH-09-2738, 2014 U.S. Dist. LEXIS 11969 *19 (D. Md., Jan. 30, 2014). "In other words, the Supreme Court did not intend the gatekeeper role to ' supplant the adversary system or the role of the [factfinder]: [v]igorous cross- examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" See *Id.* at *11 (quoting *Allison v. McGhan Medical Coro.*, 184 F.3d 1300, 1311-12 (11th Cir.1999)).

## II. DISCUSSION

### A. Coal Seam Opinions

The Coal Defendants first attack Mr. McDowell's credentials to opine as to the identification of various coal seams within the disputed area, primarily by arguing that his mining experience is insufficient in duration and too remote in time to allow him to opine as to which coal seam was mined in this case. (ECF No. 161 at pp. 2-3). According to the Coal Defendants, Mr. McDowell's 8 years of work for a mining company approximately 30 years ago renders him unqualified. To say the least, that is not facially apparent to the Court. There is no evidence before the Court that coal seam identification has significantly evolved since 1988, nor that eight years is an insufficient length of time to develop such expertise. The Court also observes that based on its reading of Mr. McDowell's reports and deposition excepts, Mr. McDowell's opinion in this area appears limited to opining that the coal in question belonged to the Upper Freeport seam, something that is not disputed by the Coal Defendants' own expert.[1]

As for the reliability of this opinion's basis, the Coal Defendants criticize Mr. McDowell's reliance on the West Virginia Geological Survey (the very learned treatise referenced by their own expert at deposition), his reliance on Maryland's equivalent survey,[2] and his reliance on the mining permit issued in this case by the Bureau of Mines, referencing the Upper Freeport seam. Again, it is not at all clear to the Court why reliance on these sources renders Mr. McDowell's opinion infirm. This is especially true when his opinion is consistent with the Coal Defendants' expert opinion and the testimony of at least one of the individual Defendants, Mr. Rose (ECF No. 130

---

[1] For example, Mr. McDowell has no opinion as to whether Upper Freeport seam was misidentified as the Kittaning seam in the disputed area. (ECF No. 154-2 at p. 35).
[2] The Coal Defendants also make an argument on late disclosure of the Maryland Geological Survey as a basis for Mr. McDowell's opinion. The Court is unwilling at this stage to preclude reference to a source that, to its understanding, is a publicly available core reference for such matters. At trial, should a sufficient foundation for this source fail to be established, the Court may re-evaluate its use.

Ex. Y at 3), in addition to the above sources. Accordingly, the Court will not, at this stage, preclude Mr. McDowell from offering the opinion that the coal at issue was from the Upper Freeport seam.

### B. Calculation of the Size and Location of the Disputed Area

The Coal Defendants next attack Mr. McDowell's credentials for determining the size and location of the disputed area where the mining took place, particularly his expertise in utilizing Google Earth and Google Images for this purpose. (ECF No. 161 at pp. 4-7). As before, it is not apparent from the Coal Defendants' arguments why Mr. McDowell's experience in mining and surveying are so lacking as to necessitate the exclusion of such testimony. As for his reliance, in part, on Google Earth and Google Images in support of his opinions, Mr. McDowell, by way of affidavit, indicates that those modalities are commonly used in the engineering, surveying, and mining industries. (ECF No. 154-1 at ¶¶ 4-5). Additionally, the Coal Defendants' own expert acknowledges as much. (ECF No. 154 at p. 15).

Next, the Coal Defendants argue that Mr. McDowell acknowledged imprecision in Google Earth and Google Images. (ECF No. 161 at pp. 6-8). However, from the Court's review of Mr. McDowell's deposition and second report, such imprecision does not necessarily undermine the task for which Mr. McDowell used these tools. That is, using these tools to establish what areas were disturbed by mining activity at particular points in time based on overhead images would not seem to require exact precision.

Finally,[3] the Coal Defendants argue that Mr. McDowell should be precluded from testifying as to how much of the disputed area falls outside the confines of a certain deed

---

[3] The Coal Defendants also challenge Mr. McDowell's ability to opine as to the owner of certain surface rights for the mined area. (ECF No. 161 at p. 10). The Court will reserve on this issue and await the precise trial testimony of Mr. McDowell with regard to ownership. By way of guidance, the Court is unlikely to allow Mr. McDowell to testify as to the construction or operation of any of the deeds at issue in the case, but may allow him to testify as to his understanding as a surveyor of certain entries on survey documents concerning ownership.

description of 29.7 acres. (ECF No. 161 at p. 9-10). In this regard, it is Defendants' argument that all of the disputed area falls within these 29.1 acres for which they have the mining rights pursuant to a series of deeds. It is Plaintiffs' argument — supported by Mr. McDowell — that only 1.1 acres of the 3.3 acres of mining falls within the 29.7 acres, but that the remainder falls outside of the 29.7 acres. The Coal Defendants argue that Mr. McDowell acknowledged his method for determining this area was subject to a 10% error, the method itself was not of the type relied upon by experts in the field, and that even the 10% error estimation was unsupported and may be understated. The Coal Defendants also argue that Mr. McDowell's estimate is contrary to eyewitness testimony by Defendant Jeffrey Rose, who was deeply involved in the mining operations at the time.

The Plaintiffs contest all of these arguments. (ECF No. 154 at pp. 18-23). Essentially, Plaintiffs argue that Mr. McDowell's error estimation is one accepted by experts in the industry for certain tools, and, though his survey was not fully completed, he adequately verified his findings through other tools that were generally accepted within the industry. (*Id.*).

At this stage, the record before the Court is insufficient for the Court to conclude that Mr. McDowell's testimony should be precluded in this area. The extent to which exact precision is required to establish what portions fall within the 29.7 acres, the ramifications on liability and damages as to those portions that might fall outside,[4] and the extent to which the offered opinions are at odds with standards in the industry or other witness testimony needs to be developed more fully so that the Court may determine whether any defects go merely to weight or to admissibility. As this is a bench trial, the Court is comfortable with its ability to make this assessment during the trial itself, with Mr. McDowell subject to what it anticipates will be a vigorous cross

---

[4] For example, the Court is unaware at this stage as to who owns the mineral rights for those portions of the disputed area (if any) that fall outside the 29.7 acres.

5

examination by the Coal Defendants. To be clear, whether a sufficient foundation can be established for the proffered opinions in this area remains an open question for the Court.

### C. Preclusion of Mr. Lewis' Testimony

As a final matter, the Coal Defendants also seek to preclude the testimony of Plaintiffs' other expert, Mr. Ronald Lewis, to the extent he relies upon the testimony of Mr. McDowell. As the Court is not precluding the testimony of Mr. McDowell at this stage, it will deny the Coal Defendants' motion as to Mr. Lewis, without prejudice to the Coal Defendants' ability to raise these issues again at trial should the Court reach different trial conclusions as to the admissibility of some or all of Mr. McDowell's opinions.

### III. CONCLUSION

For the foregoing reasons, the Coal Defendants' motions to preclude the testimony of Mr. McDowell and Mr. Lewis, (ECF Nos. 136 and 139), are **DENIED without prejudice** to the Coal Defendants' ability to raise challenges to their testimony at trial, subject to the Court's guidance herein. A separate Order shall follow.

Dated: February 11, 2019  /s/
J. Mark Coulson
United States Magistrate Judge