IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CDS FAMILY TRUST, *et al*, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:15–cv–02584–JMC |
| ERNEST R. MARTIN, *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

At its core, this case involves an allegation that Defendants wrongfully mined coal from an area where they did not own mining rights. The case is before me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). Now pending before the Court is ECF No. 150, Defendants' Corsa Coal Corp. ("Corsa Coal"), Wilson Creek Energy, LLC ("Wilson Creek"), and PBS Coals, Inc. ("PBS Coals") (collectively, the "Coal Defendants") objection pursuant to Federal Rule of Civil Procedure 72(a), to Magistrate Judge A. David Copperthite's November 8, 2018 Order (ECF No. 135) granting CDS Family Trust, LLC's and the Carl DelSignore Family Trust's (collectively, the "Plaintiffs") Rule 37 Request for Sanctions Against the Coal Defendants (ECF No. 124). The Court has also reviewed Plaintiffs' response. (ECF No. 151). The Court finds that no hearing is necessary.

Before addressing the substance, the Court addresses the procedural posture of the Coal Defendants' filing. The Coal Defendants originally filed their timely objection to the November 8, 2018 order by Magistrate Judge David Copperthite (to whom the matter had been referred for discovery and related scheduling) pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. Rule 72 provides the mechanism for review of a magistrate judge's order by the presiding district

court judge, in this case U.S. District Judge Richard Bennett. Prior to Judge Bennett's ruling on the Coal Defendants' objection, the case was referred to me for all proceedings by consent of the parties. (ECF No. 171). At the same time, the discovery referral to Judge Copperthite was terminated.

Rule 72, by its terms, is limited to the revisory power of district court judges. The Court could find no authority for the proposition that Rule 72's grant is conveyed to a magistrate judge after consent. There is also no mechanism within the Federal Rules providing for one magistrate judge to review the ruling of a fellow magistrate judge under a Rule 72 standard. At the same time, the Court believes that it would be unfair to deny an otherwise timely objection to Judge Copperthite's order based simply on procedural mootness. Additionally, now that the referral to Judge Copperthite has been terminated, it would be inappropriate to treat the Coal Defendants' objections as a motion for reconsideration. Bearing in mind the instruction of Federal Rule 1 to administer these rules with an eye towards just, speedy and inexpensive resolution of matters, the Court believes it would be most appropriate to review Judge Copperthite's Order *de novo*. With that standard in mind, the Coal Defendants' objection is **GRANTED in part** and **DENIED in part**.

## I. DISCUSSION

The crux of the discovery dispute concerns the failure of the Coal Defendants' expert, Ronald Mullennex, to issue a supplemental expert report disclosing the additional opinions he offered at his September 7, 2018 deposition that were not contained in his original expert report, in violation of Rule 26(a)(2)(D). Specifically, the challenged additional opinions concern: (1) the identity of coal seams within the disputed area mined; and, (2) a change in Mr. Mullennex's

calculations based on a change in the size of the disputed area put forth by Plaintiffs' expert in his supplemental report of February 2018. The Court addresses each in turn.

### A. Coal Seam Identification

The parties agree that all the coal mined in the disputed area comes from the Upper Freeport coal seam. They disagree on who owns the mining rights to that seam in the disputed area. One focal point of contention is whether prior deed(s) conveyed rights to all coal in the disputed area or to a specific and different seam of coal, the Kittaning seam (and not Upper Freeport). According to Plaintiffs' theory, both seams run through the disputed area and the prior deed(s) only conveyed mining rights to the Kittaning seam. That is, given the presence of two distinct seams in the disputed area, a reasonable reading of the deed(s) is that they conveyed rights to one seam (Kittaning) while retaining rights to the other (Upper Freeport). According to the Coal Defendants, either (1) only the Upper Freeport seam runs through the disputed area, and any references to the Kittaning seam in the deed(s) at issue for the disputed area are based on mistaken seam identification, or (2) if both seams run through the disputed area, the deed(s) at issue conveyed all rights to any coal, regardless of seam.

Mr. Mullennex's opinion centers primarily on the first assertion. Relying on the 1924 West Virginia Geological Survey and his own experience as a geologist working in the area, Mr. Mullennex testified that, historically, at times the Upper Freeport and Kittaning seams were confused in the North Potomac basin, the general area surrounding where the mining at issue took place, with portions of the Upper Freeport mislabeled as Kittaning. (ECF No. 150, Ex. B at pp. 19-20 & 25-27). At the same time, Mr. Mullennex could not offer an opinion as to how many different seams of coal may be present in the disputed area, nor whether the Kittaning seam ran through the disputed area in addition to the Upper Freeport seam. (*Id*. at pp. 27-28 & 35). Mr.

Mullennex also conceded that for any given mine in the area, there could be access to both the Upper Freeport seam and the Kittaning seam. (*Id*. at pp. 33-34).

Plaintiffs claim prejudice from this late-disclosed opinion. The Coal Defendants counter that this is not a new opinion at all, but simply a clarification of what Mr. Mullennex means when he uses the phase "Upper Freeport seam." The Court is of a slightly different opinion. In keeping with Judge Copperthite's analysis, without timely supplementation (which even to date has not occurred), the Court would not allow Mr. Mullennex to offer the opinion that, despite references in the deeds to the contrary, the disputed area only contains coal from the Upper Freeport seam and any references in the deeds to the Kittaning seam within the disputed area are actually references to the Upper Freeport seam. Allowing it would require, at a minimum, granting Plaintiffs a more thorough opportunity to depose Mr. Mullennex and leave to develop their own expert testimony on this issue. This would require further extending discovery in a case that has been pending for four years, something the Court is unwilling to do.

At the same time, Mr. Mullennex does not (and by his own admission cannot) offer that opinion. Instead, Mr. Mullennex merely notes that historically, within the general Potomac Basin area, there were times when references to the Kittaning seam were actually referring to the Upper Freeport seam. He supports this by citing his own general experience as a geologist in the area along with specific mention of this confusion in a learned treatise, the 1924 West Virginia Geological Survey (a source also referred to by Plaintiffs' expert, Mr. McDowell and acknowledged by him as an authoritative source). (ECF No. 137, Ex. E at p. 36 & 38). In the Court's view, that does not amount to a new expert opinion, but merely a historical observation that did not originate with Mr. Mullennex, but in a learned treatise that was equally known to and relied upon by Plaintiffs' expert, Mr. McDowell. It is also consistent with the testimony of one of

the individual Defendants, Mr. Rose. (ECF No. 130 at Ex. Y, p. 3). Additionally, because this is now a bench trial (the date for which has not yet been finalized), there is a reduced danger of confusion of the issues or of the Court mistaking these general historical observations for a specific opinion as to what occurred in this case. Accordingly, his testimony to this general historical observation will be allowed.

To be clear however, Mr. Mullennex will *not* be allowed to offer the opinion that as to the disputed area, the Kittaning seam was or was not present, that historical confusion of the two seams took place in the disputed area, or that such confusion accounts for the language used in any particular deed.

### B. Calculation Changes

As for Mr. Mullennex's recalculations based on a slight change in Mr. McDowell's estimate of the acreage of the disputed area, the Court will allow the opinion. Mr. Mullennex was clear that his analysis assumes (without endorsing) Mr. McDowell's estimate. When Mr. McDowell changed that estimate, it should be no surprise that Mr. Mullennex's opinion would necessarily change too. His methodology for the analysis did not. Plaintiffs were also able to fully explore Mr. Mullennex's re-calculation at his deposition. Accordingly, the Court finds that to be adequate supplementation of his previous report under Rule 26(e) under the circumstances of this case.

## II. CONCLUSION

For the foregoing reasons, Defendants' objections, (ECF No. 150), are **GRANTED in part** and **DENIED in part**. A separate Order shall follow.

Dated: February 11, 2019 /s/
J. Mark Coulson
United States Magistrate Judge