IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CDS FAMILY TRUST, *et al*, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:15–cv–02584–JMC |
| ERNEST R. MARTIN, *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION ADDRESSING THE LIABILITY OF DEFENDANTS CORSA COAL CORP. AND WILSON CREEK ENERGY, LLC

At its core, this case involves an allegation that Defendants wrongfully mined coal from an area where they did not own the necessary mineral rights. The case is before me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). Now pending before this Court are five motions for summary judgment (ECF Nos. 125, 157, 158, 129, and 130) by various plaintiffs and defendants. This memorandum only concerns ECF No. 130 as it relates to Defendants' Corsa Coal Corp. ("Corsa Coal") and Wilson Creek Energy, LLC ("Wilson Creek") (who, together with Defendant PBS Coals, Inc. ("PBSC") are sometimes collectively referred to as the "Coal Defendants"). The Court has also reviewed Plaintiffs' opposition and the Coal Defendants' reply. (ECF Nos. 156 and 164). No hearing is necessary for the Court to dispose of the portion addressed below. For the following reasons, ECF No. 130, is **GRANTED in part** as to Corsa Coal (all counts) and Wilson Creek (those counts based on successor or corporate affiliation imputed liability only, but not those based on direct liability). The Court reserves judgment on the remainder of the motion for after the March 18, 2019 hearing.

I.  **BACKGROUND**

Over one hundred years of conveyances now culminate in this dispute to determine who ultimately owns the mining rights to a disputed parcel in Garrett County, Maryland. (*See* ECF No. 80).[1] Plaintiffs allege that they own all rights to the parcel except for a 939/1365 interest in the Kittanning seam or vein of coal. (*Id.* at ¶¶ 12-13). The Defendants Mr. and Mrs. Martin, ("the Martins"), assert ownership over all mineral rights in the disputed parcel, and leased those rights to Defendant WPO, Inc. ("WPO") for extracting coal and other minerals. (*Id.* at ¶ 19). In January 2011, PBSC entered into an agreement to purchase WPO's rights under the lease. (*Id.* at ¶ 23). From 2011 to 2013, PBSC and WPO mined coal from the parcel. (*Id.* at ¶¶ 25-26). In 2013, PBSC assigned the lease rights back to WPO and placed an order to purchase approximately 30,000 tons of coal mined by WPO. (*Id.* at ¶ 28). In 2014, Corsa Coal purchased PBSC, which continues to exist as a wholly-owned subsidiary of Corsa Coal. (*Id.* at ¶ 29). Plaintiffs filed this instant suit seeking damages and other relief based on the coal mined from the disputed parcel during the relevant period.

Plaintiffs' Second Amended Complaint includes counts for: (1) declaratory judgment as to ownership interests within the disputed parcel; (2) trespass against the Martins, WPO, Jeffrey Rose and Debbie Rose as operators and agents of WPO ("the Roses"), and PBSC for allegedly entering the Plaintiffs' property and wrongfully removing coal; (3) unjust enrichment against all Defendants for profits alleged to have resulted from the mining; (4) conversion against all Defendants for extracting coal that Plaintiffs' claim ownership over; (5) accounting of Defendants'

---

[1] Throughout the litigation, and in Plaintiffs' Second Amended Complaint, the disputed parcel is described as "29.7 acres." (See ECF No. 80.) In Plaintiffs' opposition to the current motion, Plaintiffs now claim that while some of the disputed area is within the 29.7 acres, some falls outside these boundaries. ECF No. 156 at p. 9 n. 4. The Court will be seeking clarity on this issue at the upcoming hearing on the remainder of the Coal Defendants' Summary Judgment motion, but an exact description of the disputed area where the allegedly wrongful mining took place is not necessary for purposes of the issues addressed in this memorandum.

expenses, costs, and profits from the alleged conduct; (6) aiding and abetting against the Coal Defendants' for assisting in WPO's alleged trespass and against the Roses for filing mining permit applications for WPO and PBSC despite Plaintiffs' purported ownership; and (7) a claim for past due payments arising from a prior trespass by Mr. Rose.[2] (*Id.*).

In addition to the five pending motions for summary judgment, there have been several other substantive motions filed, many with overlapping or interconnected legal issues. (*See* ECF Nos. 136, 139 and 150). The Court initially asked the parties to determine the most efficient schedule to consider all outstanding issues within this case. No consensus was reached. (*See* ECF Nos. 182-84). Therefore, the Court has attempted to address the outstanding legal issues in a manner that maximizes efficiency for the parties and the Court. As such, the Court now addresses Plaintiffs' theories of recovery against Defendants Corsa Coal and Wilson Creek.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.35 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific

---

[2] Defendants alleged numerous Cross-claims and Counterclaims that are not implicated by the motion at hand.

facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F.Supp.2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998).

### III. DISCUSSION

Corsa Coal and Wilson Creek argue that summary judgment is appropriate because Plaintiffs cannot substantiate any of the counts against them, based either on successor/corporate affiliation imputed liability for the actions of PBSC or direct liability for Corsa Coal's and Wilson Creek's own actions. (ECF No. 131-1 at 22). As discussed more fully below, as to Corsa Coal, the Court agrees. As to Wilson Creek, the Court agrees that it has no successor/corporate affiliation imputed liability, but, pending the results of the upcoming hearing, denies Wilson Creek's motion for theories based on any direct liability for its own actions at this time.

#### A. Successor in Interest/Corporate Affiliation Liability

Plaintiffs advance a theories of imputed liability against both Corsa Coal and Wilson Creek for the actions of PBSC based on them being successors in interest and/or corporate affiliates. A corporation that "acquires the assets of another corporation does not take the liabilities" unless: "(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2)

the transaction may be considered a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992) (internal quotations omitted). The "mere continuation" exception applies when there is a transfer of assets between multiple corporations that essentially results in one remaining successor corporation. *Id.* The doctrine exists "to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors." *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 297 (1989). In short, it prevents a corporation from escaping liability if it "goes through a mere change in form without a significant change in substance[.]" *Id.*

The Coal Defendants argue that successor in interest liability is inapplicable in that Corsa Coal never acquired PBSC's assets. Furthermore, Defendants stress that Plaintiffs' basis stems from an incorrect belief that the entities merged. (ECF No. 130-26 at ¶ 5). The Coal Defendants also point to the facts that: (1) PBSC entered into the Coal Purchase Agreement with WPO in March of 2013 (ECF No. 130-3 at ¶ 29); (2) Corsa Coal acquired the issued and outstanding capital stock of PBSC under a Share Purchase Agreement executed in July of 2014 (*Id.* at ¶ 22); and (3) since July 2014, PBSC has continued to operate as a separate and distinct corporation. (*Id.* at 24). PBSC's independence is further supported through corporate minutes, public filings, the testimony of Corsa Coals' corporate designee, Mr. Merritts, and lastly by Plaintiffs' Second Amended Complaint which admits that "PBS Coal still exists and is a wholly-owned subsidiary of Corsa Coal." (ECF No. 130-5 at ¶ 29).

All the evidence supplied by Plaintiffs in opposition can be organized into two categories. The first is testimony concerning similar corporate officers and directors between the entities. Such evidence, however, is unpersuasive in this context because "[i]t is entirely appropriate for

directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods,* 524 U.S. 51, 69 (1998). Similarly, Wilson Creek is a sibling corporation to PBSC within the Corsa Coal family. Testimony cited by Plaintiffs themselves establishes that while PBSC and Wilson Creek share some corporate officers and have at times exchanged equipment, personnel and product, corporate formalities were observed. (ECF No. 156-7). As such, there is no evidence prompting this Court to ignore corporate formalities and impute liability to either Corsa Coal or Wilson Creek for the actions of PBSC.

The second category urged by Plaintiffs, in this Court's view, is evidence that is more supportive of Defendants' arguments than Plaintiffs'. Plaintiffs devote a healthy portion of their argument to evidence of PBSC's continuing to operate in the same manner and with the same workforce as it had before Corsa Coal's acquisition. (*See* ECF No. 156 at 4-5 and 16-17). While such evidence may be persuasive if the parties were arguing over whether PBSC continued to exist post acquisition, it becomes keenly unpersuasive when, as is the case here, Plaintiff is attempting to invoke successor in interest liability on PBSC's parent and sibling corporations. Absent further justification for the applicability of successor in interest liability, the Court must agree that the doctrine does not apply under the circumstances.

Finally, the existence of a corporate relationship, such as exists between parent and sibling corporations cannot, by itself, give rise to liability. "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61 (1998) (citation omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n. 44 (3d Cir. 2010) ("As a matter of well-settled common law,

6

a subsidiary is a distinct legal entity and is not liable for the actions of its parent or sister corporations simply by dint of the corporate relationship."). Plaintiffs fail to supply any case law that would prompt this Court to deviate from these fundamental principles of corporate law as articulated by the Supreme Court and Third Circuit. Thus, imputation of liability based merely on corporate ties does not create a genuine dispute of material fact as to either Corsa Coal or Wilson Creek.

Accordingly, as to any theory of liability relying merely on corporate affiliation or the principals of successor in interest liability for the alleged actions of PBSC, judgment is entered in favor of Corsa Coal and Wilson Creek as a matter of law.

### B. Direct Liability

The Coal Defendants also assert that no evidence supports direct liability against Corsa Coal or Wilson Energy for the various torts and unjust enrichment alleged based on the wrongful mining and sale of coal. In support of its argument, the Coal Defendants supply the deposition testimony of Carmen DelSignore, Jr., the Plaintiffs' organizational designee, who testified that Corsa Coal was named in this case because "Corsa [Coal] now owns PBS [Coal.]" (ECF No. 130-4, 41:15-22). Mr. DelSignore further testified that there is no evidence that Corsa Coal ever entered Plaintiffs' property, ever mined the coal in question, or acted in concert with anyone who may have entered Plaintiffs' property or mined the coal in question. (*Id.* at 64:22; 65:1-22; 66:1-69:3). He agrees that there is no evidence of relationship between WPO and Corsa Coal or Wilson Creek (*Id.* at 71:8-21), nor any evidence that Corsa Coal did anything other than own PBSC. (*Id.* at 62:13-22; 63:1-3).

As for Wilson Creek, Mr. DelSignore testified that Plaintiffs have no evidence regarding any of the above pertaining to Wilson Creek, (*Id.* at 43:9-12; 63:8-9; 64:22; 65:1-22; 66:1-69:3;

7

and 71:8-21), and Wilson Creek was named in the suit because Plaintiffs believed it merged with PBSC. (ECF No. 130-26 at ¶ 5).[3] Lastly, and as to unjust enrichment, the Defendants assert that Plaintiffs cannot supply evidence of any benefit conferred or retained as to the specific coal at issue. (ECF No. 130-1 at 23).

In opposition, Plaintiffs contend that they should not be bound by the testimony of Mr. DelSignore, a layperson without direct knowledge of the Coal Defendants' admitted corporate associations or their specific activities in this case. (ECF No. 156 at p. 4 n. 2). Even if valid such an argument does not excuse Plaintiffs from coming forward with other evidence creating at least a factual dispute as to the direct liability of Corsa Coal and Wilson Creek for their own actions. Plaintiffs argue that direct liability should be attributed to Corsa Coal and Wilson Energy because the knowledge of PBSC as to the allegedly wrongful mining "must be imputed," a version of the corporate successor argument rejected above. Given that the Court has found no basis for imputing such liability based on a corporate successor or affiliation theory, such an argument must fail.

As to Corsa Coal, Plaintiffs have put forward no facts that would serve as a basis for a dispute about any direct actions by Corsa Coal that support the torts or theories alleged. Corsa Coal is a holding company for several companies that mine, process, buy, and sell coal. There is simply no evidence it had any direct participation with respect to the wrongs alleged. As such, judgment is granted in favor of Corsa Coal as to all counts.

As for Wilson Creek, however, the record is not totally devoid of disputable facts. Both sides cited the testimony of Mr. Merritts, Wilson Creek's corporate designee. Mr. Merritts states that once Corsa Coal purchased PBSC on August 20, 2014, approximately 8,285 tons, (28%) of the 29,234 tons of disputed coal purchased by PBSC from WPO, was used to fill customer orders

---

[3] Evidence presented, however, shows that the two companies never merged. (ECF No. 130-3 at ¶¶ 22-25).

of both PBSC and Wilson Creek through January of 2015 (with no real way of tracing the coal as between the two). (ECF Nos. 156-7 and 164-4). Thus, unlike Corsa Coal, Plaintiffs have presented some evidence of Wilson Creek's interaction with the coal at issue, raising the potential for direct liability against Wilson Creek such that the Court would at least like to have the benefit of oral argument before deciding Wilson Creek's direct liability as a matter of law. Accordingly, at this stage, Wilson Creek will remain a defendant as to theories based on its direct liability as described above. To be clear, this ruling is without prejudice to Wilson Creek's ability to raise this issue again at oral argument.

## IV. CONCLUSION

For the foregoing reasons, Coal Defendants' Motion for Summary Judgment, ECF No. 130, is **GRANTED in part** as to all counts against Corsa Coal, and as to all theories based on indirect imputed liability against Wilson Creek. The motion is denied at this time as to theories of direct liability against Wilson Creek based on its interaction with the coal at issue without prejudice to raising those arguments again at oral argument. A separate order follows.

Dated: February 22, 2018                /s/
                                        J. Mark Coulson
                                        United States Magistrate Judge