IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CDS FAMILY TRUST, *et al*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 1:15–cv–02584–JMC |
| ERNEST R. MARTIN, *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This case at its core involves a dispute between Plaintiffs and Defendants over coal that was allegedly wrongfully mined by Defendants from land (and associated mineral rights) purportedly owned by Plaintiffs. Within this larger dispute there are also sub-disputes between the parties. One such sub-dispute gave rise to a counterclaim by Defendants WPO, Inc., Jeffrey Rose and Debbie Rose (collectively, the "WPO Defendants") against Plaintiffs that includes claims for breach of contract, unjust enrichment, promissory estoppel, negligent interference with contractual relationship, fraudulent misrepresentation and fraud. (ECF No 29). As to that counterclaim, Plaintiffs have moved for summary judgment. (ECF No. 127).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 174, 178, 179, 180, and 181). The Court has now considered Plaintiffs' motion, along with the WPO Defendants' Opposition. (ECF No. 158). Additionally, the Court heard limited oral argument on May 21, 2019 and additional oral argument on August 21, 2019. (ECF Nos. 210 and 241). Last, the WPO Defendants made an additional production of documents to which Plaintiffs replied. (ECF Nos. 242 and 244). For the reasons set forth more

1

fully below, Plaintiffs' Motion for Summary Judgment as to Defendants Counterclaim, (ECF No. 127), is **GRANTED**.

I. **BACKGROUND**

At some point prior to the filing of the instant lawsuit, Plaintiffs and the WPO Defendants had a dispute about other coal allegedly wrongfully mined by the WPO Defendants from land owned by Plaintiffs (the so-called "Callie Mine"). The parties resolved that dispute privately, with the WPO Defendants agreeing to pay Plaintiffs a royalty for the disputed coal.[1] As explained by counsel at the recent oral argument, as a follow-up to that dispute, Plaintiffs and the WPO Defendants discussed a possible agreement whereby the WPO Defendants would be permitted to mine additional coal from the Plaintiffs' Callie Mine, paying royalties to Plaintiffs for any coal mined. The caveat, according to the WPO Defendants, was that mining the Callie Mine was not economically efficient due to the amount of "cover" over the coal, and the less than ideal quality of the coal. (ECF No. 158-3 at p. 2). Therefore, the WPO Defendants also sought an agreement to mine from two other of Plaintiffs' properties—the "Bosley" and "Bakerstown" mines. These two sites had less cover over the coal, making them more economically attractive to mine. *Id.* According to the WPO Defendants, "Plaintiffs verbally agreed to allow WPO, Inc. to mine the Bosley and Bakerstown sites if WPO, Inc. mined the Callie Mine." *Id.*

Originally, the WPO Defendants argued that to memorialize these agreements, the parties executed certain deeds, deeds of trust, and promissory notes granting certain mining rights to them on or about September 9, 2010. (*Id.* at 3). The WPO Defendants also contended that the recorded versions of those documents were somehow fraudulently altered so that Plaintiffs retained those

---

[1] Plaintiffs in the current lawsuit claim that the Defendant Jeffrey Rose only partially paid the agreed settlement in that dispute. See Third Amended Complaint (ECF No. 237) at Count 7. The WPO Defendants do not dispute Plaintiffs' right to the unpaid amount, but dispute that Mr. Rose is personally liable for this debt. (ECF No. 157).

2

rights. (*Id*). At the recent oral argument however, the WPO Defendants clarified that these September 9, 2010 documents did not directly concern mining rights to the Bosley and Bakerstown sites. Rather, they acknowledged that these documents relate to another transaction involving a different piece of property for which the WPO Defendants sought (and were granted) surface rights so that they would have a separate place for the "spoil" removed from the mines during mining operations.

As for the documentation of the Callie-Bosley-Bakerstown agreements described above, at oral argument, counsel for the WPO Defendants acknowledged that based on his experience he would expect there to be a: (1) surface lease; (2) mineral rights lease; and, (3) royalty agreement spelling out the rights and responsibilities of the parties including such things as the length of the agreement, the royalty amount, and the conditions under which either party could terminate the agreement . None of those documents have been located during the extensive discovery that has taken place in this case  Instead, the WPO Defendants contend that they have sufficient circumstantial evidence of the agreements to prove their existence. First, the WPO Defendants allege that they applied for and were granted a mining permit for the Bosley site by the Maryland Department of the Environment. The WPO Defendants argue not only that a permit would not have been pursued in the absence of an agreement, but also that the State of Maryland would not have issued a permit in the absence of a valid mineral rights lease in favor of the WPO Defendants.[2] Additionally, counsel proffered that the WPO Defendants did some sampling on the sites in anticipation of mining operations. Finally, the WPO Defendants argue that they would not have purchased a parcel for the "spoil" (as described in the September 9, 2010 documents) if they did not fully anticipate commencing mining pursuant to the agreements.

---

[2] Counsel for the WPO Defendants later conceded however that there might be situations where permits were issued in the absence of a mineral rights lease.

The WPO Defendants alleged that "[b]eginning in 2012 and continuing to the present, the Plaintiffs have refused to allow WPO, Inc. to permit and mine said coal." (ECF No. 158-3 at p. 3). They further allege that "Plaintiffs have communicated with the Maryland Department of the Environment and [it] refused to allow WPO, Inc. to mine coal on the new property." *Id.* As a result, the WPO Defendants claim "compensatory, reliance and expectancy damages" in the form of lost revenues and profits from the coal they expected to mine, expense in removing equipment from the sites, and (having been deprived of those revenues and profits) loss of various mining equipment to repossession. (ECF No. 29 at p. 18; ECF No. 158-3 at p. 3.)

Plaintiffs argue that any purported agreements to mine (including associated grants of mineral rights) are subject to the statute of frauds which, in the absence of any writing memorializing the agreements, is not satisfied here. Further, Plaintiffs argue that because the breach occurred "beginning in 2012," the applicable three-year statute of limitations ran prior to the filing of the WPO Defendants' counterclaim in December of 2015.

In response to these arguments, the WPO Defendants were asked to muster and file any additional supporting documentation. Specifically, the Court requested the Permit to the Maryland Department of the Environment which purportedly shows the existence of an agreement between WPO and Plaintiffs, and any documentation concerning Plaintiffs' alleged revocation of the agreement. In response, the WPO Defendants have produced three additional documents: (1) a 104-page resubmission of a permit application to mine on the Bosley tract dated December 12, 2014; (2) a coal reserve estimate of the Bosley tract dated November 18, 2013; and (3) ten emails exchanged in 2013 and 2014 between Jeffery Rose and Carmen Del Signore, a representative of Plaintiffs. (ECF No. 242). While the additional documents narrowly defeat Plaintiffs' statute of

4

limitations argument, the WPO Defendants fail to prevent summary judgment based on the statute of frauds and an overall fatal lack of proof concerning both breach and damages.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting FED. R. CIV. P. 56(e)). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact

through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III. DISCUSSION

Defendants assert six counterclaims all premised on the existence of a contractual relationship—be it written, oral, or non-existent. In evaluating these claims, it must be noted that "this Court will apply the Maryland law on contracts, equitable estoppel, and the Statute of Frauds." *Cambridge Inc. v. Goodyear Tire & Rubber Co.*, 471 F. Supp. 1309, 1312 (D. Md. 1979). Plaintiffs' Motion does not address each claim individually, but rather argues that judgment against all six claims is proper because the claims violate the statute of limitations and the statute of frauds. While the Court is not prepared to grant summary judgment based on the statute of limitations, the WPO Defendants have failed to show a genuine dispute of material fact as to the statute of frauds. Furthermore, the counterclaims suffer from a fatal lack of clear and definite terms leaving Plaintiffs' entitled to relief as a matter of law on all counterclaims, including promissory estoppel.

### A. The Statute of Limitations

Plaintiffs argue that that Defendants' counterclaims, based on a 2010 oral agreement, are barred by the statute of limitations. In accordance with Maryland Code Section 5-101, a civil action shall be filed within three years from the date it accrues. . ." MD. CODE. ANN., CTS. & JUD. PROC. § 5-101. In contract cases, the statute of limitations generally begins to run from date of breach, for it is then that cause of action accrues and becomes enforceable. *Butler v. VisionAIR*, 385 F. Supp. 2d 549, 554 (D. Md. 2005) (citing *Mayor and Council of Federalsburg v. Allied Contractors*, 275 Md. 151, 158 (1975)). Although the "resubmitted mining permit" produced by the WPO Defendants does little to advance their counterclaims, the Court does feel that it narrowly prevents summary judgment based on the statute of limitation arguments at this time. Notably,

6

the document does not reference any specific agreement between WPO, Inc. and the Plaintiffs, let alone any of that agreement's terms. The December 12, 2014 cover letter does, however, explain how:

> [T]his application was originally submitted under WPO, Inc. but was subsequently revised to PBS Coals (OPA-1-12). Issues arose between PBS Coals and mineral owner CDS Family Trust which ultimately resulted in the termination of the PBS application by MDE/Bureau of Mines. In order to re-activate the review process and salvage the proposed mining operation, it has been agreed to that CDS Family Trust will sell or otherwise transfer mineral ownership to surface owner David Bosley, et al. . . . . Per your direction, references to PBS Coals (OPA-11-12) have been replaced with item noting the applicant as WPO, Inc. (OPA-14-58).

(ECF No. 242 at 1). In a light most favorable to the nonmoving party, the Court interprets this portion of the letter to mean that there has been a course of dealings between these parties and over the Bosley Mine resulting in at least three attempted agreements between: (1) WPO, Inc. and the CDS Family Trust; (2) PBS Coals and the CDS Trust; and (3) WPO, Inc. and Mr. David Bosley. Notwithstanding the 2010 date as plead, (ECF No. 27), the only other date presented is that of this resubmitted application, December 12, 2014. The letter also details that the actual sale of the mineral rights from CDS Family Trust to Mr. Bosley, so that the third referenced agreement could be made, was anticipated to occur in January 2015. While the documentation does elude to an agreement, it also creates problems for the WPO Defendants. First, the Court still does not know when the first agreement, or the other two agreements, were made or attempted. Second, the permit details a factual scenario that the WPO Defendants did not address within their pleadings, specifically the involvement of Co-Defendant PBS Coals and that the final agreement would be made with Mr. Bosley, not the Plaintiffs. These new details arguably generate new questions as to standing and why each alleged agreement fell through. Moreover, the documentation only

7

concerns the Bosley Mine, leaving any agreements as to the Callie and Bakerstown mines unaddressed.

These deductions are further supported by the emails exchanged between Mr. Rose and Mr. Del Signore. While no one email supplies a discrete agreement or specific date of agreement (or first breach thereof), when read in a light most favorable to the nonmoving party the emails show at least two things. First, that the parties actively discussed and contemplated an agreement for the WPO Defendants to mine on the Bosley tract, (ECF No. 242-2 at 3), the Bakerstown tract, (*Id.* at 2), and the "Kelly mine," which this Court assumes is a mistaken phonetic spelling of the Callie mine. (*Id.* at 4). Second, that those discussions occurred during a period from October 26, 2013 through March 14, 2014. Notably absent is any evidence of a discrete agreement or revocation of any such agreement.

Nevertheless, the Court does find that the documentation narrowly prevents summary judgment as to the statute of limitations. When evaluated in a light most favorable to the WPO Defendants, this documentation shows continued negotiations over the Bosley mine that had not yet concluded as of December 12, 2014. The emails also, albeit ambiguously, show continued negotiations and discussions over possible mining on Bosley, Kelly (likely Callie), and Bakerstown. With the instant suit being filed less than three years after these discussions, the Court cannot definitively hold that the WPO Defendants are barred by the three-year statute of limitations. Accordingly, the Court does not find that Plaintiffs are entitled to judgment as a matter of law due to the statute of limitations.

### B. The Statute of Frauds

While the Court cannot find that the statute of limitation prompts judgment in Plaintiffs' favor, the WPO Defendants have failed to show a genuine dispute of material fact as to the applicability of the statute of frauds. Not only does the statute of frauds bar most of the counterclaims, but the WPO Defendants have failed to detail any terms of the supposed agreement and failed to produce any documentation that can be reasonably interpreted as Plaintiffs reneging on the agreement. Even in a light most favorable to the nonmoving party, this Court is unable to parse out any clear and definite terms of any bargain or promise that would prevent summary judgment as to the equitable counterclaims.

#### 1. Count 1- Breach of Contract

To establish a breach of contract, there must be a contractual obligation owed and a material breach of that obligation. *RRC v. BAA*, 413 Md. 638, 658 (2010). In accordance with traditional concepts of public policy, for certain agreements to be enforceable they must be memorialized in writing. This concept is encompassed by the Statute of Frauds which dictates that:

> No action may be brought on any contract for the sale or disposition of **land** or of any *interest in or concerning* land unless the contract on which the action is brought, or some memorandum or note of it, is in **writing** and signed by the party to be charged or some other person lawfully authorized by him.

MD. CODE ANN., REAL PROP. § 5-104 (emphasis added). Consequently, the dispositive question before the Court is whether the alleged agreements (which were admittedly oral)[3] involved an

---

[3] The WPO Defendants contend that they entered into an oral agreement in which WPO agreed to mine coal for the benefit of the Plaintiffs' on a property known as the Callie Mine, and because of this agreement Plaintiffs agreed to allow WPO to permit and mine coal on the Bosley and Bakerstown locations. (ECF No. 28 p. 16). Although the WPO Defendants were afforded additional time to supply actual documentation of an agreement, as Plaintiff noted, none of the papers produced could be deemed an actual written agreement, nor did they supply necessary evidence of key terms of the alleged oral agreement. (ECF No. 242 and 244).

interest in, or concerned the land, and thus would be subject to writing requirement of the statute of frauds.

Throughout these extensive pleadings, neither party adequately addressed exactly how the agreements at issue were characterized, i.e., a royalty agreement, a mineral rights lease, a mineral rights or conveyance, or some other type of license allowing the mining to take place. While the documents and emails provided vaguely reference leases, no such leases between the parties at hand and concerning the parcels in dispute have been produced. (ECF No. 242). This lack of clarity offers a prime illustration of the purpose of the writing requirement under the statute of frauds. Despite this ambiguity, the contemplated agreements, as discussed at the hearing, almost certainly had to involve some formal permission granted by Plaintiffs to allow Defendants to mine the various properties, which most typically would involve the leasing or outright conveyance of those rights. As such, the majority of precedent holds that mineral rights, including coal, create "an *interest in real* estate within the meaning of the statute of frauds." *Har-Bel Coal Co., v. Asher Coal Mining Co.*, 414 S.W.2d 128, 130 (Ky. 1966) (emphasis added).[4] *See also Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679 (Tex. App. June 21, 1984) ("The alleged oral agreement for the conveyance by Phillips to Weinacht of a greater royalty interest [in a coal lease] is a contract for the conveyance of real property and falls within the statute of frauds. Therefore, the enforcement of the oral agreement is barred"). Because rights allowing coal mining are interests in land, the enforcement of the oral agreement is barred by the statute of frauds.

In addition to the above concerns, which themselves defeat most of the WPO Defendants' counterclaims, the Court also notes that there is a fatal lack of proof concerning breach and damages. *Dastranj v. Dehghan*, 2017 WL 3531476, at *8 (D. Md. Aug. 17, 2017) (explaining the

---

[4] Neither side has directed the Court to a Maryland case determinative on this issue. Consequently, the Court finds the majority view persuasive, and will rely on such.

10

Court need not definitively determine the type of damages that *might* have been available to the party at trial, because the subject clearly comes within the statute of frauds). This is because, "[w]hether oral or written, a contract is not enforceable unless it expresses with definiteness and certainty the nature and extent of the parties' obligations and the essential terms of the agreement." *Maslow v. Vanguri*, 168 Md. App. 298, 321 (2006). As to the former, without knowing the terms of any agreement, the conditions under which either party could elect to terminate, the obligations of the parties regarding how and when mining was to commence and be conducted, the Court would have an insufficient basis to determine whether Plaintiffs' refusal to allow such operations was wrongful or within its contractual rights. As to the latter, without knowing the term, acreage, royalty amount, and place of valuation (*e.g.*, price "in place" prior to mining, price at the mouth of the mine, or price once delivered to market), it is impossible to know with the necessary precision what revenues were lost or what the profits from those revenue would be.[5] Although the WPO Defendants generally assert an agreement to mine one mine (the Callie Mine) in return for the opportunity to mine two others (the Bosley and Bakerstown mines), there is no evidence of any details of that promise, including most importantly the terms by which the mining would (or could) take place.[6] These gaps offer an additional support to Plaintiffs' motion.

---

[5] The WPO Defendants were granted additional time to supply any documentation concerning the terms of the agreement, its formation, breach, and damages. Of those documents produced, none can be reasonably interpreted as detailing the terms of the agreements in question. The only one that includes what can be construed as contractual terms between the parties is an email from C. Del Signore to Mr. Rose on June 7, 2013. The email, however, details the royalty terms over a property mined and concludes that Mr. Rose already paid $7,500.00 but still owes Mr. Del Signore $15,476.40. These amounts and arithmetic are identical to those serving as the basis for a controversy detailed within Plaintiffs' count 7 for breach of contract. (*See* ECF Nos. 202-203). Seeing as that contract concerns a debt owed to Plaintiffs, not by Plaintiffs, those terms must be unrelated to the issues at hand.

[6] Plaintiffs have "maintained that an agreement was never reached and that the Plaintiffs and WPO had only engaged in preliminary discussions." (ECF No. 244).

### 2. Count II: Unjust Enrichment

Having found that no enforceable contract exists, the Court will consider, in the alternative, the WPO Defendants' claim for unjust enrichment. "A claim of unjust enrichment provides a means of relief 'when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *ARINC, Inc. v. Martin*, 2019 WL 398509, at *6 (D. Md. Jan 30, 2019) (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998)).[7][8] Under Maryland Law, a claim for unjust enrichment has three elements: (1) a benefit conferred; (2) an appreciation or knowledge of the benefit; and (3) acceptance or retention of the benefit without the payment of its value. *SMG Holdings v. Arena Ventures*, 2018 WL 1391613, at *6 (Md. Ct. Spec. App. Mar. 20, 2018) (*citing Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007)).

The WPO Defendants' counterclaims fail under this theory. With respect to the first requirement for unjust enrichment—a benefit conferred—the WPO Defendants provide only conclusory allegations that Plaintiffs received "the revenue" from the coal mined by WPO. (ECF No. 29 at p. 19). At the same time, the WPO Defendants claimed, during oral argument, that they were prevented from mining when their permits were revoked. *See also id.* Throughout the WPO Defendants' counterclaims they continue to emphasize only the harms *they* suffered based on their reliance. (ECF No. 29 p.19-21). For example, they assert that they purchased and move equipment onto the site, failed to seek other mining locations, and lost the benefit of coal mining at other locations due to this breach. At no point do the WPO Defendants explain in any detail how the harm to them confers a benefit to Plaintiffs. Accordingly, Plaintiff is entitled to summary judgment

---

[7] *See also Jackson v. 2109 Brandywine*, 180 Md. App. 535, 575 (2008) ("The doctrine of unjust enrichment is applicable where the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money, and gives rise to the policy of restitution as a remedy.").

as to Count II because, even in a light most favorable to the Defendants, they fail to establish a genuine dispute of material fact.

### 3. Count III: Promissory Estoppel

Count three of Plaintiffs' Motion puts forth a claim of promissory estoppel. Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact. *Pavel Enters. v. A.S. Johnson Co.*, 342 Md. 143 (1996). Under Maryland law, a claim of promissory estoppel requires four elements: (1) a clear and definite promise; (2) promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise. *Oliveira v. Sugarman*, 226 Md. App. 524, 553–41 (2016), *aff'd*, 451 Md. 208 (2017). Because the application of promissory estoppel depends upon the facts and circumstances in each case, "it will not be applied unless it is shown that the person sought to be estopped has been guilty of some wrongful or unconscientious conduct upon which another relied and was misled to his injury." *Cambridge*, 471 F. Supp. at 1315.

Despite defense counsel's assertions that the terms may be testified to and the documentation produced at the Court's request contains the needed terms, the WPO Defendants have still failed to show a clear and definite promise for which this Court may enforce. Under the doctrine of promissory estoppel, "[a] clear and definite promise . . . is one that reasonably defines the contours of the action or forbearance." *McKenzie v. Comcast Cable Commc'ns., Inc.*, 393 F. Supp. 2d 362, 372–73 (D. Md. 2005). Discussion of an action, without more, is insufficient. *Compare Mogavero v. Silverstein*, 142 Md. App. 259, 273 (2002) (finding an alleged agreement to help "with the construction end of the project" was too vague and indefinite to meet the first

13

element of promissory estoppel), *with Oliveira v. Sugarman*, 451 Md. 208, 236–37 (2017) (holding a shareholder Proxy Statement which said the "awards we have granted will vest only if performance conditions are achieved . . . and if additional service-based vesting periods . . . are satisfied" constituted a clear and definite promise). As explained throughout this memorandum, this Court is left with no terms or promise it could enforce. The documents and emails produced supply no enforceable promise. (*See* ECF No. 242 and 244). Mr. Rose's affidavit does not detail any terms or promise beyond the asserted permission to mine. (ECF No. 158-3). At most, and in a light most favorable to the nonmoving party, this Court can say that the WPO Defendants may have been permitted to mine. This alone, in a four-year-old case that has already concluded discovery, is not enough to stave off summary judgment. Accordingly, the WPO Defendants have failed to show a genuine dispute of material fact and Plaintiffs are entitled to judgement as a matter of law as to Count III.

### 4. Counts IV–VII: Negligent Interference with a Contractual Relationship, Fraudulent Misrepresentation, Misrepresentation, and Fraud.

For the reasons detailed above, Defendants' other counterclaims do not withstand summary judgment. Counterclaims IV, V, VI, and VII all depend, at a minimum, on the existence of a promise and reliance on the promise. Having found no such promise to exist, these remaining counterclaims too must fail. As such, Plaintiffs' Motion for Summary Judgment is GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' are entitled to judgment as a matter of law and their Motion for Summary Judgment as to the WPO Defendants' Counterclaims, (ECF No. 127), is **GRANTED.** A separate order follows.

Dated: September 5, 2019                             /s/
                                    J. Mark Coulson
                                    United States Magistrate Judge