IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CDS FAMILY TRUST, *et al*, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: 1:15-cv-02584-JMC |
| ERNEST R. MARTIN, *et al*, | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

This case at its core involves a dispute between Plaintiffs and Defendants over coal that was allegedly wrongfully mined by Defendants from land (and associated mineral rights) purportedly owned by Plaintiffs.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4 (D. Md. 2018). (ECF Nos. 174, 178, 179, 180, and 181). Defendants PBS Coals, Inc. and Wilson Creek Energy, LLC ("Wilson Creek") have moved for summary judgment with regard to Count II (Trespass), Count III (Unjust Enrichment), Count V (Accounting) and Count VI (Aiding and Abetting a Trespass) in Plaintiffs' operative Third Amended Complaint (ECF No. 237). The Court has now considered Defendants' motion, Plaintiffs' Opposition thereto, and Defendants' Reply. (ECF Nos. 268, 269, 272). Additionally, the Court heard oral argument on October 15, 2020. (ECF No. 279). For the reasons set forth more fully below, Defendants' Motion for Summary Judgment (ECF No. 268), is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

Nearly two years have elapsed since this case was referred to me for all proceedings.  (ECF No. 171).  In that time, a continuous flurry of activity in this matter has resulted in a dozen different substantive opinions from the Court. This Court need not reiterate this entire saga now.  Instead, the Court will recite the facts necessary to resolve the instant motion.  As a starting point, the parties agree that the relevant mining occurred between March 2013 and January 2015.  (ECF No. 280 at 3–5; 42).  However, additional background provides the necessary context to understand the parties' arguments.

On January 13, 2011, PBS Coals entered into an Agreement of Sale with WPO, Inc. ("2011 Coal Purchase Agreement").  (ECF No. 156-12).  Under this agreement, PBS Coals purchased various WPO leasehold interests—including the 29.7 acre parcel referred to in this litigation as the "Martin Parcel" —in an area generally known as Table Rock, and acquired WPO's mining permit. *Id.* at 2; 8.  The 2011 Coal Purchase Agreement enabled PBS Coals to begin mining under WPO's permits prior to the transfer of the permit.  *Id.* at 4.  PBS Coals and WPO also entered into a Contract Mining Agreement ("Mining Agreement") on the same day.  (ECF No. 156-13).  Under the Mining Agreement, PBS Coals controlled the operation, supervised WPO (PBS Coals' independent contractor), and "preform[ed] all engineering work and prepare[d] all mining plans and maps necessary for [WPO's] Operations."  *Id.* at 3.  The agreement further provided that WPO would perform the mining "according to its own manner and methods" not inconsistent with the Mining Agreement "and without direction or control by PBS [Coals], except as may be necessary for PBS [Coals] to protect its property or ensure conformity with mining plans."  *Id.* at 6.

Around this same time, PBS Coals sought other mineral leases in the area of Table Rock Road.  (ECF No. 156-1 at 8).  One such lease concerned rights owned by CDS.  *Id.* at 8.

Accordingly, PBS Coals contacted CDS to discuss PBS Coals' desire to lease those rights.  *Id.*  As a part of these negotiations, PBS Coals sent CDS a map depicting the area—allegedly CDS owned property—in which PBS Coals sought a lease.  *Id.* at 15–16.  Moreover, CDS showed PBS Coals mineral holdings reports and mineral rights maps demonstrating that CDS owned the land at issue in Table Rock.  (ECF No. 269 at 2).  Ultimately, though CDS and PBS Coals did not execute a coal lease, PBS nonetheless mined coal from the area, and CDS informed PBS Coals of the mineral rights to which it claimed ownership.  *Id.* at 2.  In fact, that claim ultimately led to a declaratory judgment action being filed in federal court in the Western District of Pennsylvania (the "Pennsylvania Action") wherein PBS Coals sought a determination of what was owed to CDS for such coal.  *See PBS Coals, Inc. v. CDS Family Trust, LLC et al*, Case No.: 3:13-cv-00240-KRG. Importantly, Plaintiffs confirmed at oral argument that the Pennsylvania Action involved coal from a *different* CDS parcel than the coal at issue in the present case, and CDS' position in the Pennsylvania Action was that by 2012, all the coal disputed in the Pennsylvania Action had been mined.  (ECF No. 280 at 30; 42).

PBS Coals and WPO terminated the 2011 Coal Purchase Agreement and Mining Agreement on March 26, 2013.  (ECF No. 156-14).  All leases that PBS Coals assumed under the 2011 Coal Purchase Agreement were assigned back to WPO.  *Id.*  That same day, PBS Coals and WPO executed a new Coal Purchase Order and Agreement (the "2013 Coal Purchase Agreement"), wherein PBS Coals agreed to buy 30,000 tons of coal mined from Table Rock by WPO.  (ECF No. 156-15 at 2).  Therefore, as of March 26, 2013, WPO determined where and how to mine at Table Rock.  (ECF No. 130-27 at 7).  PBS Coals was not involved in the "operation or control of WPO," in relation to the Table Rock mines once the 2013 Coal Purchase Agreement was executed.  *Id.* at 8.  Indeed, "from November 2012 forward, PBS Coals did not mine at Table

Rock." *Id.* at 10.  PBS Coals employees were not physically on the property after November 2012. *Id.* at 12.

From March 2013 to February 2015, PBS Coals received shipments of coal pursuant to the 2013 Coal Purchase Agreement.  (ECF No. 131-2 at 4).  As a part of the March 2013 Coal Purchase Agreement, WPO and PBS Coals entered into a series of terms and conditions.  *Id.* at 187–94. Among these, Seller WPO warranted the following of its goods:

> Sellers represents and warrants [(sic)] that it has good title to all coal delivered ("Coal") under this Purchase Order ("Agreement") and that such Coal, when delivered to Buyer, shall be delivered free and clear of all claims, liens or encumbrances . . . .

*Id.* at 4; 187.  Accordingly, PBS Coals "believed that any coal mined pursuant to the [2013 Coal Purchase Agreement] would, and did, come from 29.7 acres of property under which Ernest and Patricia Martin purportedly owned the coal," (i.e., the Martin Parcel) and that "all of Plaintiffs' coal at Table Rock had already been mined as of November of 2012."  *Id.* at 4.  WPO mined the coal to fulfil the 2013 Coal Purchase Agreement; PBS Coals paid WPO for the same.  *Id.* at 5.

As to Wilson Creek, CDS admitted that, during the relevant time period, it had no knowledge or evidence that Wilson Creek was physically present on CDS' property or mined CDS' coal.  (ECF No. 131-4 at 20).  After August 2014, Wilson Creek did, however, purchase approximately 8,285 tons of raw coal from PBS Coals via intercompany transfer.  (ECF No. 268-4 at 2–3).

The present dispute arises from the 2013 Coal Purchase Agreement and the ownership of the mineral rights where WPO performed mining to fulfill that agreement.  Initially, CDS claimed mineral rights to the coal removed from the 29.7-acre Martin Parcel and that the coal at issue came from that parcel.  After this Court determined that CDS did not own the mineral rights to the Martin Parcel (*see* ECF No. 130), CDS amended its complaint to allege that some of WPO's mining

4

extended beyond the Martin Parcel onto approximately 2.26 acres for which CDS owned the mining rights.[1]  It is that 2.26-acre area that remains in dispute as to its size, location, and to what extent (if at all), WPO performed mining operations for the coal it ultimately sold to PBS Coals pursuant to the 2013 Coal Purchase Agreement.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).  The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Heckman v. Ryder Truck*

---

[1] PBS Coals disputes that mining occurred beyond the 29.7-acre Martin Parcel, and also disputes the true size and location of the area claimed by CDS.  (ECF No. 280 at 14-15).  Interpreting the facts in the light most favorable to Plaintiffs for purposes of this motion, the Court will assume that mining took place on 2.26 acres that fall beyond the Martin Parcel and that Plaintiffs own some share of the mineral rights for that additional 2.26-acre area.

*Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III.   DISCUSSION

Defendants move for summary judgment on four of Plaintiffs' claims: trespass, aiding and abetting, unjust enrichment, and accounting.[2]  The Court will address each in turn.

### A.   *Trespass (Count II)*

Trespass is "an intentional or negligent intrusion upon or to the possessory interest in property of another."  *Uthus v. Valley Mill Camp, Inc.*, 243 Md. App. 539, 555 (2019) (quoting *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 444 (2008)).  "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent."  *Id.* (quoting *Royal Inv. Grp., LLC*, 183 Md. App. at 444).

Plaintiffs' theory of trespass revolves around PBS Coals and/or Wilson Creek causing or directing WPO to enter CDS' land and mine coal pursuant to the 2013 Coal Purchase Agreement.  As such, the parties raise and dispute the "third party trespass" prong of the Restatement (Second) of Torts, § 158(a), which provides that "one is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other, or *causes a thing or a third person to*

---

[2] Though briefed, Plaintiffs conceded at oral argument that the accounting claim is moot after years of discovery in this case.  (ECF No. 280 at 42).  Accordingly, the Court will grant Defendants' motion as to the accounting claim.

*do so*."[3]   (Emphasis added).   Under the Restatement (Second), the third party trespass principle

applies where a defendant (1) commands or requests a third person enter another's property; or (2)

by physical duress causes a third person to enter another's property.   Comment j to § 158 explains

third party trespass liability more fully:

> If, by any act of his, the actor intentionally causes a third person to enter land, he is
> as fully liable as though he himself enters.   Thus, if the actor has **commanded or
> requested a third person to enter land in the possession of another, the actor
> is responsible for the third person's entry if it be a trespass.**   This is an
> application of the general principle that one who intentionally causes another to do
> an act is under the same liability as though he himself does the act in question.   So
> too, one who by physical duress causes a third person to go upon the land of another
> or who carries the third person there against his will is liable as a trespasser,
> although the third person may not be liable.

Restatement (Second) of Torts, § 158 cmt. j (emphasis added).

In a trespass action, "[t]he intentions of the defendant are simply not material."   *Ford v.*

*Baltimore City Sheriff's Office*, 149 Md. App. 107, 129 (2002).   Indeed, a "plaintiff need not

demonstrate that the defendant's intrusion was committed with tortious intent, but must establish

that the defendant consciously intended to do the 'act that constitutes entry upon'" another's

property.   *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 508 (2005) (quoting *Baltimore Gas*

*& Elec. Co. v. Flippo*, 112 Md. App. 75, 85 (1996)).

The parties' briefing implicates *Liberty Place Retail Associates, L.P., v. Israelite School of*

*Universal Practical Knowledge*, 102 A.3d 501, 506–08 (Pa. Super. 2014) ("*Liberty Place*"), and

*Kopka v. Bell Telephone Co.*, 91 A.2d 232 (Pa. 1952) ("*Kopka*"), cases in which the Superior Court

and Supreme Court of Pennsylvania, respectively, had occasion to examine the doctrine of third

party trespass.   In *Liberty Place*, plaintiff shop owners alleged that defendants' demonstrations on

---

[3] Defendants' research indicates that no Maryland case has analyzed the "third party trespass" prong of the Restatement (Second) of Torts, § 158(a).   (ECF No. 268-2 at 12).   The Court similarly has not discovered a case applying this section of the Restatement in Maryland; however, for purposes of this decision, assumes that Maryland law recognizes such a cause of action.

a public sidewalk caused a third party trespass when passersby gathered on plaintiff's property to observe those demonstrations. *Liberty Place*, 102 A.2d at 502. In reaching its decision, the Superior Court relied on the meaning of intent as contemplated in the Restatement (Second) of Torts: "[t]he word 'intent' . . . denote[s] that the actor desires to cause consequences of his act, or that he believes that the consequences **are substantially certain to result from it.**" *Liberty Place*, 102 A.2d at 506 (quoting Restatement (Second) of Torts § 8A) (emphasis in original). Ultimately, the *Liberty Place* Court concluded that a third party trespass would not lie where the plaintiff could not demonstrate that the defendants were "substantially certain" passersby would enter the plaintiff's property as a result of the defendants' demonstration. *Liberty Place*, 102 A.2d at 507. The Superior Court further found *Kopka* distinguishable as a case where "the defendant clearly intended to cause the third party to trespass." *Liberty Place*, 102 A.2d at 507. In that regard, this Court finds *Kopka* more on point.

In *Kopka*, the defendant—a telephone company—contracted with a third party—an independent contractor—to drill the holes necessary to erect telephone poles. *Kopka*, 102 A.2d at 233. "The [telephone c]ompany had indicated to [the independent contractor] where the holes were to be dug and the poles and anchor rods erected." *Kopka*, 102 A.2d at 233. The independent contractor dug one such hole on plaintiff's property where the telephone company failed to obtain an easement. *Kopka*, 102 A.2d at 233. On these facts, the Supreme Court of Pennsylvania determined that the telephone company was liable for third party trespass because the telephone company directed the independent contractor to enter and dig a hole on plaintiff's land, even though the telephone company was never physically present on the land.

The crux of Plaintiffs' trespass argument is that PBS Coals and Wilson Creek "caused WPO to continue its mining efforts [on CDS' land] in order to fill the [2013] Coal Purchase

Agreement." (ECF No. 269 at 14). Plaintiffs assert that "Defendants clearly intended to cause WPO to trespass on Plaintiffs' [p]remises." *Id.* at 16. More specifically, Plaintiffs contend PBS Coals' prior interactions with CDS "in attempting to purchase the Upper Freeport coal," and PBS Coals' alleged knowledge of coal ownership satisfies the requisite level of intent to support a trespass on CDS' land. *Id.* at 13. Defendants argue that no record evidence supports a trespass theory and point to WPO's testimony that (1) WPO had no dealings with Wilson Creek; and (2) PBS Coals did not direct WPO where or how to mine. *Id.*

Viewing the facts and inferences drawn therefrom in a light most favorable to CDS, PBS Coals and Wilson Creek are entitled to judgment as a matter of law on Plaintiffs' trespass claim. The record is clear that, during the relevant time period at issue, PBS Coals and Wilson Creek were not physically present on CDS' property. Under a straightforward trespass analysis, the lack of physical presence on another's property negates the second element of a trespass claim—that the defendant commits a "physical act or force against that property." *Uthus*, 243 Md. App. at 555 (quoting *Royal Inv. Grp., LLC*, 183 Md. App. at 444). Therefore, any liability for trespass must stem from PBS Coals or Wilson Creek causing, commanding, or requesting a third person or party (here, allegedly WPO) to enter CDS' property.

For Plaintiffs' trespass claim to survive summary judgment, the facts (in a light most favorable to CDS) must show that, from March 2013 and January 2015, PBS Coals directed or instructed WPO to mine coal at a location where CDS owned the mining rights or that PBS Coals' actions otherwise made it "substantially certain" that such trespass would occur. However, the record does not bear out such an argument. The evidence falls woefully short of demonstrating that PBS Coals or Wilson Creek caused, commanded, or requested WPO enter CDS land to mine coal or otherwise made such a trespass substantially certain to occur. Under the 2013 Coal

Purchase Agreement, WPO fully controlled and directed mining operations beginning in March 2013, and PBS Coals had no hand in directing the same.  Perhaps recognizing this, Plaintiffs instead argue that the previous dealings between CDS and PBS Coals in 2011 that culminated in the Pennsylvania Action, as well as PBS Coals' prior knowledge that CDS held some mineral rights in the Table Rock area where WPO was performing its 2013 operations support the conclusion that PBS Coals knew or should have known that some or all of the coal it was purchasing from WPO from 2013-2015 belonged to CDS.   This, however, is too attenuated of an argument to support a claim of third party trespass by PBS Coals and Wilson Creek.[4]  This is especially so given Plaintiffs' admission at oral argument that the Pennsylvania Action involved *different* coal from a *different* parcel, all of which it agrees was exhausted prior to WPO's 2013 operations.  (ECF No. 280 at 30; 42).[5]  Similarly, Plaintiffs' argument that PBS Coals' knowledge that CDS was the owner of an allegedly 2.26-acre parcel contiguous to the 29.7 acre Martin Parcel is not enough to establish third party trespass, especially given that trespass actions in general not uncommonly involve a dispute between contiguous landowners.  It would be just as reasonable for PBS Coals to comfortably conclude that the WPO coal was most likely coming from the much larger 29.7-acre Martin Parcel than the much smaller 2.26-acre parcel (assuming for present purposes that such mining did occur on the smaller parcel as asserted by Plaintiffs).

*Kopka* merits more discussion.  The parties seemingly understand the import of the principles established in that case, but debate how this Court should interpret it.  Plaintiffs argue that *Kopka* is similar to this case in that the telephone company and independent contractor

---

[4] Perhaps, this argument may hold water as it pertains to Plaintiffs' conversion claim if indeed such mining took place on some or all of the 2.26-acre area claimed by CDS.  That, however, is to be determined at trial.

[5] Plaintiffs, of course, must take that position to avoid the potential defense of release raised by PBS Coals.  That is, if the Pennsylvania Action involved coal from the same area as disputed here, the settlement of that action could arguably release any claims relating to it.

intended to dig on plaintiff's property and had an agreement memorializing the same.  (ECF No. 269 at 16).  Defendants counter that *Kopka* is "the exact opposite" of this case in that the telephone company instructed the independent contractor *where* exactly to dig the hole, and the independent contractor complied; PBS Coals' lack of instruction to WPO as to *where* to dig permeates Defendants' argument.  (ECF No. 273 at 11).  The Court agrees with Defendants on this point. The facts and evidence viewed in a light most favorable to CDS fail to show that PBS Coals or Wilson Creek commanded, requested, directed or caused WPO to mine CDS' land.

As a final matter, the evidence similarly fails to show that PBS Coals' or Wilson Creek was substantially certain that WPO would mine CDS' land.  To the contrary, prior litigation between CDS and PBS Coals involving different mining from a different area, or even PBS Coals' knowledge that CDS was an owner of mineral rights on a contiguous parcel fails to satisfy such a standard.  At best, viewed in CDS' favor, the evidence shows that PBS Coals' familiarity with the region *might* have caused incidental mining on CDS property.  However, this is not enough for the trespass claim to survive summary judgment.[6]  Accordingly, Defendants are entitled to judgment as a matter of law as to Plaintiffs' claim of trespass (Count II).

## B. *Aiding and Abetting a Trespass (Count VI)*

Count Six of Plaintiffs' operative Third Amended Complaint alleges PBS Coals' liability for "Aiding and Abetting a Trespass."  (ECF No. 237 at 12).  Count Six makes no mention of Wilson Creek; instead it contends that PBS Coals, Jeffery Rose and Debbie Rose aided and abetted PBS Coals' and WPO's allegedly wrongful conduct.  *Id.*  The tort of aiding and abetting, recognized under Maryland law in *Alleco Inc. v. Harry & Jeanette Weinberg Found. Inc.*, 340 Md.

---

[6] For completeness, Plaintiffs do not allege, and the evidence certainly does not reflect, that PBS Coals or Wilson Creek in any way caused WPO any physical duress to mine where it did.  Therefore, the third party trespass claim must fail.

176, 200 (1995), consists of three elements: "(1) independent tortious conduct by the principal of the tort; (2) assistance, aid or encouragement to the principal of the tort; and (3) knowledge that the tortious act would be the natural consequence of their conduct." *Natarajan v. Raju*, 2017 WL 386540, at \*2 (D. Md. Jan. 27, 2017).  It is commonly understood that "a person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances and approves the same, is in law deemed to be an aider and abettor, and liable as principal." *Alleco*, 340 Md. at 200 (quoting 2 Hillard, *Law of Torts* at 243 (4th ed. 1874).  It follows, then, that the tort of aiding and abetting necessarily "requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Alleco*, 340 Md. at 201 (citations omitted).

The Court's grant of summary judgment on Plaintiffs' trespass claim, *supra* at III.A., proves fatal for Plaintiffs' claim of aiding and abetting a trespass.  Without independent tortious conduct—i.e., a trespass—by the principal of the tort, liability may not attach to the purported aider and abettor.  *Alleco Inc.*, 340 Md. at 201 ("[T]ort liability for aiding and abetting can only exist where someone has committed the actual tort.").  Accordingly, this claim must fail.[7]  Defendants are entitled to judgment as a matter of law as to Plaintiffs' claim of aiding and abetting a trespass (Count VI).

### C.  *Unjust Enrichment (Count III)*

---

[7] Even if this Court determined that Plaintiffs' trespass claim could survive summary judgment, it is not convinced that Plaintiffs' aiding and abetting claim would survive with it.  Plaintiffs argue in their opposition that "Coal Defendants engaged in a pattern and practice to obtain Plaintiffs' coal . . . through information sharing, encouragement and, ultimately, payment.  ECF No. 269 at 20.  To support this argument, Plaintiffs point to the "intimate history" between CDS, PBS Coals, and WPO.  However, the Court struggles to see how past history or generalized knowledge attributable to PBS Coals, if any, constitutes the "assistance, aid or encouragement" necessary to support the tort. Moreover, the Court agrees with Defendants that commercial transactions—i.e., PBS Coals' and Wilson Creek's purchase of Coal from WPO—without assistance, aid or encouragement to commit a trespass, are insufficient to impose liability for aiding and abetting the same. *See generally Adobe Systems Inc. v. Gardiner*, 300 F. Supp. 3d 718, 727–28 (D. Md. 2018).

Defendants also move for summary judgment on Plaintiffs' claim of unjust enrichment. "A claim of unjust enrichment provides a means of relief 'when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *ARINC, Inc. v. Martin*, 2019 WL 398509, at *6 (D. Md. Jan 30, 2019) (quoting *Dunnaville v. McCormick & Co.*, 21 F. Supp. 2d 527, 535 (D. Md. 1998)).  Under Maryland law, unjust enrichment consists of three elements: "(1) A benefit conferred upon the defendant by the plaintiff; (2) An appreciation or knowledge by the defendant of the benefit; and (3) The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (quoting *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–52 (2000)).  Maryland law is clear that one is unjustly enriched when he or she

> non-tortiously and without notice that another has the beneficial ownership of it, acquires property which it would have been wrongful for him to acquire with notice of the facts and *of which he is not a purchaser for value is*, upon discovery of the facts, under a duty to account to the other for the direct product of the subject matter and the value of the use to him.

*Plitt v. Greenberg*, 242 Md. 359, 364 (1966) (quoting Restatement (First) of Restitution § 123) (emphasis added); *see also Fidelity Nat'l Title Ins. Co. v. Chicago Title Ins. Co.*, 1995 WL 478028, at *4 (4th Cir. Aug. 14, 1995).  For this reason, "[a] *bona fide* purchaser (a purchaser for value who acquires property without notice of a competing claim) cannot be unjustly enriched."  *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (citing *Plitt*, 242 Md. at 363).  Put another way, to assert a claim for unjust enrichment, Plaintiffs must demonstrate that Defendants were not good faith purchasers for value.  *See Haley*, 659 F. Supp. 2d at 724.

The parties do not dispute the legal principle at issue here—whether a good faith purchaser for value may be held liable on a theory of unjust enrichment (they cannot)—but rather whether

Defendants are *actually* good faith purchasers for value.  Defendants argue that PBS Coals and Wilson Creek are good faith purchasers for value and that Plaintiffs failed to produce evidence to the contrary.  Defendants point to the 2013 Coal Purchase Agreement; specifically, that PBS Coals took "proactive measures to contractually employ good faith measures to avoid competing claims." (ECF No. 268-2 at 16).  Defendants further suggest Wilson Creek "simply purchased some amount of the coal from PBS Coals for value *via* intercompany transfer after Wilson Creek became a sibling affiliate of PBS Coals."  *Id.*  Plaintiffs counter and assert that PBS Coals' and Wilson Creek's level of knowledge before entering into the 2013 Coal Purchase Agreement with WPO prevent a determination that Defendants were good faith purchasers for value.

Plaintiffs' argument that PBS Coals' attempted to obtain a lease from CDS in 2011 (for what Plaintiffs concede was a different parcel) is insufficient to generate a genuine dispute of material fact.  The evidence, even in a light most favorable to CDS, does not shows that PBS Coals and Wilson Creek were anything but *bona fide* purchasers for value.  As mentioned above, the 2011 dispute that culminated in the Pennsylvania Action involved different coal from a different location by Plaintiffs' own admission.  Similarly, PBS Coals' knowledge (assuming such knowledge) that CDS owned a much small contiguous parcel to the 29.7 Martin Parcel does not defeat its status as a *bona fide* purchaser.  Under the March 2013 Coal Purchase Agreement, PBS Coals paid market value for the 30,000 tons of coal it received.  Plaintiffs argument cannot overcome the language of the agreement which provides that WPO warranted its goods to be "free and clear of all claims, liens or encumbrances." (ECF No. 131-2 at 4; 187).  In short, WPO guaranteed that it held good title to the coal it offered PBS Coals.  Plaintiffs have not generated any evidence of bad faith that would negate PBS Coals' status as a good faith purchased for value.  The same applies to Wilson Creek.  Wilson Creek paid PBS Coals to received coal via

intercompany transfer.  Without any indicia of bad faith vis-à-vis PBS Coals or Wilson Creek, Defendants are entitled to judgment as a matter of law as to Plaintiffs' claim of unjust enrichment (Count III).

### D. *Measure of Damages*

As a final matter, Defendants move to cap the amount of damages Plaintiffs may recover at trial.  (ECF No. 268-2 at 17).  On this point, Md. Code (1957, 2013 Repl. Vol.), Courts and Judicial Proceedings ("CJ") § 11-202 controls.  Section 11-202 provides,

> (a) In the absence of fraud, negligence, or willful trespass, the measure of damages for the wrongful working and abstracting of another's minerals is the value to the person from whose property they were taken at the time of the taking of the minerals in their native state, before severance.

> (b) If the minerals were abstracted furtively or in bad faith the measure of damages is the value of the minerals ready for market without allowance for labor and expenses.

Defendants contend that no evidence would support a finding of fraud, negligence, willful trespass, or furtive or bad faith conduct.  (ECF No. 268-2 at 18).  Plaintiffs argue that because Defendants were not "blind purchaser[s] to an arms-length transaction" in the 2013 Coal Purchase agreement, there exists an argument that Defendants acted in bad faith.  (ECF No. 269 at 21).

The Court's opinion today clearly negates Plaintiffs' ability to argue that a willful trespass by PBS Coals occurred to trigger the measure of damages outlined in CJ § 11-202(a).  However, Plaintiffs' claim that Defendants furtively or in bad faith, or negligently mined Plaintiffs' coal, thereby tortuously converting Plaintiffs' property, survives the instant motion.  For example, Plaintiffs emphasize facts that, if proven, might show that PBS Coals did little, if anything, to verify that the coal being purchased fell within WPO's mining rights notwithstanding PBS Coals' prior knowledge that there were competing rights in the general area based on PBS Coals' own mining operations in the area.  Whether such knowledge satisfies the statutory standard for

enhanced damages awaits further factual development at trial.  As such, it would be premature to decide at this juncture, given Plaintiffs' remaining conversion claim, the proper measure of damages, if Plaintiffs prevail at trial.

## IV.    CONCLUSION

For the foregoing reasons, Defendants are entitled to judgment as a matter of law as to Plaintiffs' trespass, aiding and abetting a trespass, and unjust enrichment claims.  Further, Plaintiffs affirmed at oral argument that they are no longer pursuing their claim for an accounting, and that, given the Court's previous rulings, Plaintiff Carl DelSignore Family Trust (which is a different entity from Plaintiff CDS Family Trust, LLC) possesses no rights to the 2.26 acres still in dispute. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 268) is hereby GRANTED as to Counts II, III, V, and VI.  Plaintiff Carl DelSignore Family Trust is DISMISSED as a plaintiff in this action.  Defendants' motion to cap damages pursuant to CJ § 11-202 is hereby DENIED. A separate order follows.


Date: December 10, 2020                              _____/s/_____
                                                      J. Mark Coulson
                                                      United States Magistrate Judge